UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELENA IZKHAKOV,

                  Plaintiff,

-v-

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

                  Defendant.

12 Civ. 0348 (ALC)(MHD)

**DECLARATION OF ELENA IZKHAKOV IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

ELENA IZKHAKOV hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am over 18 years of age and am competent to submit this Declaration.

2. I am the plaintiff in this action and submit this declaration in opposition to Defendant's motion to transfer venue pursuant to 28 U.S.C. §1404(a).

3. I was born in Uzbekistan in 1965, and attended medical school between 1982 and 1988.

4. While in medical school, I married my husband, Alexey. Soon thereafter we had our first child, Neriy.

5. Upon graduation, from medical school I became a resident in State Clinic 16, Tashkent, Uzbekistan. During my residency we had our second child, Veronika.

6. In 1990, my family and I emigrated to Israel, where I enrolled in a course of general medicine at Tel Aviv Medical Center's Ichilov Hospital, one of Israel's highest ranking hospitals.

7. In 1991 I was certified to practice medicine in Israel, and completed my internal medicine residency at the Ichilov Hospital between 1992 and 1996. I received a certificate of

"specialist in internal medicine" in 1996, and was an attending physician in the Department of Internal Medicine from 1996 to 2003 at the Tel Aviv Medical Center, Ichilov Hospital.

8. I have been published in approximately fifteen articles, and have appeared on numerous Israeli television medical programs.

9. I have been the recipient of numerous substantial research grants, awards and acknowledgments, including highest rank among my peers in instructing visiting physicians (2009) and highest rank among professors by last-year medical students at Tel Aviv University's Sackler Medical School (2009).

10. During the period of 1993 to 1996, my family began emigrating from Israel to New York: my sister, Dr. Marina Galperin, my parents, my brother, Dr. David Isaacs, and my sister, Dr. Susanna Isaacs.

11. Naturally, this lead my husband and me to consider relocating to New York with our children to join the rest of the family.

12. I signed up for the USMLE examination, which one must take in order to be allowed to practice medicine in New York. I took the exam without any preparation. Unfortunately, while I passed one part of the examination ("Step 2"), I had trouble passing another part ("Step 1"), even after repeated attempts. I believe this was because the technical and medical content tested in this part of the exam differed substantially from that which was taught and tested in the Tashkent Medical Institute. In addition, I was now a full-time physician, raising two young children and, in 1998, relocating my family residence from Jaffo to central Tel Aviv. I had little time to study or prepare for the examinations, each of which I took without any preparatory courses.

13. In January of 1999, my husband, Alexey, suffered a serious accident at work, which rendered him bedridden and unable to work for approximately one full year. This frustrated our hopes to emigrate from Israel to New York at that point in our lives. I opened a private medical office while simultaneously assuming the position of senior physician in the Therapeutic Department of Tel Aviv medical Center and also worked at the Sick Fund Emergency Room at Maccabi Health Services, Tel Aviv, Israel.

14. From 2003 to 2005 I completed my endocrinology residency at the Tel Aviv Medical Center's Ichilov Hospital, and received my Certificate of Specialist in Endocrinology in 2006. Since, I have been an attending endocrinologist in the Endocrinology Department of the Tel Aviv Medical Center, Ichilov Hospital.

15. In late 2008 my son Neriy got married in New York. He and his wife established their domicile in New York. They were blessed with a child the following October, 2009.

16. At the same time, my daughter, Veronika, started college in New York in September, 2009.

17. It became apparent to my husband and me that we would finally need to relocate to New York, where virtually our entire family resided.

18. Accordingly, I enrolled in a USMLE-preparatory course, "the Medical Course for USMLE Step 1," in the American School, Ramat Gan, Israel, in January, 2010.

19. On March 14, 2010, with the assistance of my American School instructor, Dr. Daniella Levy, I completed the ECFMG On-line Services Authentication Process, which one must complete in order to apply to take the USMLE exam.

20.     On March 29, 2010, I received a letter from Bill Kelley, Associate Vice President for Operations at ECFMG, advising me of an allegation that I had provided false information in the Online Authentication Process. It was alleged that (1) I had apparently clicked on the button which read "[n]o, I have never submitted an application to ECFMG for any examination," rather than the button which read "[y]es, I have previously submitted an application to ECFMG for examination, even if I did not take the examination;" (2) I had selected from a "pick list" of medical schools "Second Tashkent State Medical Institute" as the medical school I had attended, which allegedly conflicted with the medical school in the ECFMG record – Tashkent State Medical Institute.

21.     I shared the letter with my Dr. Levy, who told me not to worry, that this was a minor mistake and not a big deal.

22.     The very next day I wrote back to Mr. Kelley, explaining the discrepancies.[1]

23.     I continued taking the Medical Course for USMLE Step 1 until its completion in May.

---

[1] I explained that I had misapprehended the question to mean whether I had ever taken the *online* version of the exam before, which I had not, and therefore answered by clicking the "no" button. Indeed, the course instructor, Dr. Daniella Levy, who had assisted me in completing the Online Authentication process, testified to the haste in which we completed it and to our joint misunderstanding of the question. Significantly, falsification of this fact would have had no bearing whatsoever on the application process, as there is no limit to the number of times one may apply.

Regarding the "discrepancy" in medical school identity, I explained to Mr. Kelley that the medical school I attended had originally been named the "Tashkent State Medical Institute." It wasn't until 1990, two years after I graduated, that the school was subdivided into the First and Second Tashkent State Medical Institutes. I simply selected the best choice from the online "pick list," the one which best conformed to my experience, the Second Tashkent State Medical Institute. My response to the question had been neither nefarious nor misleading – it was the best option available absent the opportunity to further elaborate on the school's historical evolution.

24. On May 20, 2010 I received another letter from Mr. Kelley, informing me that the ECFMG Committee has found that I had engaged in irregular behavior and that I would therefore be prohibited from applying to take the USMLE.

25. I contacted my attorney in new York, Barry Black. Mr Black filed two Petitions for Reconsideration and one Notice of Appeal with ECFMG. After extraordinarily long waiting periods, each was denied.

26. In October, 2010, my husband moved to New York in anticipation of the family's relocation.

27. On January 17, 2012, my attorneys filed this action.

28. Defendants formally moved this Court to transfer venue to the Eastern District of Pennsylvania on April 27, 2012.

29. Mr. Kelley stated in his declaration that "ECFMG is unaware of any relevant witnesses, documents or other evidence located in the Southern District of New York." (Kelly Decl. ¶ 21.)

30. Mr. Kelley had repeatedly been informed that my entire family lived in New York. Indeed, at Mr. Black's request, Mr. Kelley had confirmed to us that New York State had no rule that would prevent a physician from practicing in the state based on the number of times he or she took the USMLE. Accordingly, Mr. Black noted on page six of my October 18, 2010 Petition for Reconsideration that "[t]he State of New York has no limit on the number of times an applicant may fail the examination." Exhibit A. Mr. Kelley and ECFMG were well aware of my intentions to move to New York and practice medicine here.

31. In addition, Mr. Black notified ECFMG's attorney in court on March 28, 2012 and in his April 16, 2012 letter to her of all my connections to New York and that they are relevant to this case. Exhibit B.

32. Thus, it was untruthful for ECFMG to submit a motion on April 27, 2012 stating that "ECFMG is unaware of any relevant witnesses, documents or other evidence located in the Southern District of New York." I do not understand how the ECFMG could have in good faith submitted to this Court such a patently false statement.

33. To the contrary, practically my *entire* immediate family lives in the Southern District of New York[2]:

    a. My parents Pnina and Ilyusha;

    b. My Husband Alexy;

    c. My daughter Veronika, who is presently a junior at S.U.N.Y. Stony Brook;

    d. My sister Dr. Marina Galperin and her husband, Dr. Mark Galperin and all their children;

    e. My sister Dr. Susanna Isaacs and her child;

    f. My brother Dr. David Isaacs, his wife Dayana and their child.

34. I am now a permanent legal resident of the United States, having been granted a Visa on September 16, 2010. On my Application for Immigrant Visa and Alien Registration which I filed with the United States Department of State, in response to the inquiry about my "permanent address

---

[2] Only my son Neriy, his wife Shoshana, along with their newborn Yael, have temporarily relocated to Buffalo, NY, where Neiry is now studying at S.U.N.Y Buffalo Medical School. However their domicile, too, is in the Southern District of New York.

in the United States where you intend to live," I listed 62-05 84th St. in Middle Village, NY. Exhibit C.

35. I have never set foot in the Eastern District of Pennsylvania, nor have I engaged in any transaction whatsoever with anyone in the District.

36. The *only* reason that I am not residing in New York right now is that the ECFMG has prevented me from doing so. As a result of my husband's disability, I had become the family's primary provider. I could not move to New York and support my family without gainful employment.

37. If this case goes to trial, I would want most or all of my family members to testify on my behalf, to corroborate much of my own testimony and other evidence I would offer, and to testify as to the damages we have all suffered as a family as a result of the ECFMG's preventing me from applying to take the USMLE and eventually come to New York and practice law here.

38. My entire family and I would suffer great inconvenience and significant financial loss if we were to litigate, and possibly try, this case in Pennsylvania.

39. I therefore ask that the Court deny Defendant's motion to transfer venue to the Eastern District of Pennsylvania, which is based in substantial part on the incorrect assertion that I have no connection to the Southern District of New York.

40. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 11, 2012.

Elena Izkhakov

Page 7 of 7